UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gary Reed and Tom Vevea,
as Trustees of the Minnesota
Laborers Health and Welfare
Fund et al.,

        Plaintiffs,

v.                                              MEMORANDUM OPINION
                                               AND ORDER
                                               Civil No. 09-1976

EnviroTech Remediation Services, Inc.
And Lindstrom Cleaning & Construction
Inc. d/b/a Lindstrom Restoration and
Lindstrom Environmental, Inc.

        Defendants.

_____

        Pamela Hodges Nissen, Anderson, Helgen, Davis & Nissen, P.A. and William K. Ecklund and Ruth S. Marcott, Felhaber, Larson, Fenlon & Vogt, P.A., Counsel for Plaintiffs.

        Timothy A. Sullivan, Sarah E. Crippen and Elizabeth C. Borer, Best & Flanagan LLP, Counsel for Defendant Lindstrom Cleaning & Construction, Inc.

_____

**I.      Introduction**

        Plaintiff Trust Funds (the "Funds") brought this action seeking unpaid employee benefit contributions from EnviroTech Remediation Services, Inc. ("EnviroTech"). The Funds later added Lindstrom Cleaning & Construction, Inc.

1

d/b/a Lindstrom Restoration and Lindstrom Environmental, Inc. ("Lindstrom") as a defendant, claiming that Lindstrom is the alter ego or successor in interest to EnviroTech.

In their Amended Complaint, the Funds asserted four causes of action. In Count I, the Funds sought the amount due pursuant to reports that EnviroTech has submitted for the months May through August 2009. The Funds were granted partial summary judgment against EnviroTech in the amount of $184,000 as to this Count. In Count II, the Funds seek the opportunity to audit all of EnviroTech's employment and payroll records for the audit period November 1, 2007 through the present. The Funds also ask that Lindstrom be ordered to comply with this request, in the event that Lindstrom is in control of EnviroTech's records. In Count III, the Funds assert that Lindstrom is liable for any unpaid employment benefit contributions under an alter ego or successor liability theory. The final claim, Count IV, is a claim for damages.

On July 1, 2011, this Court denied Lindstrom's motion for summary judgment. The Court specifically found that there was no alter ego liability, but that questions of fact existed as to whether Lindstrom was liable as a successor in interest.

Discovery is now complete, and the Funds have brought a motion for summary judgment as to Counts II and III and as to Lindstrom's counterclaim. The Funds assert that EnviroTech engaged in a long-term fraudulent payment system in order to avoid paying contributions to the Funds. For example, the Funds assert that many employees were paid through accounts payable checks, rather than employee paychecks. The Funds further assert that EnviroTech distributed envelopes of cash to employees to compensate them for hours worked. The Funds assert that there is a possible carryover of cash payment system to Lindstrom. The Funds have completed an audit, and now argue that $1,089,122.97 is due and owing for unpaid contributions, $108,912.30 in liquidated damages and $245,372.67 for single interest[1].

## II.   Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 322-23 (1986). The party seeking

---

[1] This amount does not include any amounts determined to be due from Lindstrom operations or from the previous judgment entered on January 7, 2011.

summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

### III. Discussion

#### A. Counts II and III of the Amended Complaint

The Court finds that there are material factual disputes with respect to the methodology used by the Funds' expert auditor, Debbie Carlson, to determine damages. For example, at her deposition, Carlson was unable to substantiate her inclusion of several amounts that were obviously attributable to non-covered work. In particular, one audit included payments make to Glenson Contracting. Carlson made no attempt to find out what work was done for Glenson, but if she had, Carlson would have discovered that the work performed was concrete work - which is clearly not covered employee work. Nonetheless, she included $52,706.81 in alleged fringe fund contributions owing relating to payments made

to Glenson.  (See Crippen Aff., Ex. G (Carlson Dep. at 41-43, 64); Carlson Aff ¶ 6.)

There is also a fact question as to the hourly rate applied to cash payments made to EnviroTech employees.  Carlson used the rate of $20 per hour, finding such a rate was reasonable, and because $20 per hour was less than the going rate, which is typical if an employee is paid in cash.  (Crippen Aff., Ex. G (Carlson Dep. at 65).)  EnviroTech employee Dahl, however, testified that the hourly rate was $25 in 2007, and then it was increased to $30 per hour in 2008.  (Nissen Aff., Ex. B (Dahl Dep. at 105-06).)  Dahl's testimony is undisputed.  Applying the higher hourly rate reduces the cash payment audit amount substantially, as fewer hours were actually paid, resulting in fewer hours on which to base a claim for unpaid fringe benefit contributions.

In their motion, the Funds again argue that Lindstrom is the alter ego of EnviroTech given Dave Sobaski's control over the combined operations of EnviroTech and Lindstrom.  This Court has already found that Lindstrom is not the alter ego of EnviroTech, and the Funds have not introduced any new evidence that would affect the Court's prior ruling.  The same is true with respect to the issue of successor liability theory.  The Funds have not presented any new evidence that would affect the Court's prior ruling on this issue.  Accordingly,

5

the Funds' motion for summary judgment as to Counts II and III of the Amended Complaint will be denied.

> B. **Lindstrom Counterclaim**

Lindstrom has asserted a counterclaim against the Funds, alleging that the Funds, through their agents, engaged in tortious interference with Lindstrom's prospective business advantages.  Lindstrom alleges that the Funds communicated with Lindstrom's consultants, customers and potential customers with the object of inducing those third parties not to enter into, or to discontinue, a business relationship with Lindstrom.

Minnesota courts have adopted the elements of an intentional interference with prospective contractual relations claim as set forth in Restatement (Second) of Torts § 766B (1979).  United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982).  Section 766B states that:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relations, whether the interference consists of
>
>> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>>
>> (b) preventing the other from acquiring or continuing the

prospective relation.

To show causation, Lindstrom must show that the Funds engaged in a wrongful act that caused Lindstrom to lose contracts or prospective contracts. See Rainforest Café, Inc. v. Amazon, Inc., 86 F. Supp.2d 886, 909 (D. Minn. 1999) (finding plaintiff must prove that "but for" defendant's wrongful act, plaintiff would have been granted the claimed business advantage).  Whether actions rise to the level of interference, intentional or justified, may turn on fact issues and inferences from the evidence presented.  Northside Mercury Sales & Serv., Inc. v. Ford Motor Co., 871 F.2d 758, 762 (8th Cir. 1989).

The Funds assert that a trustee acting on behalf of an employment benefit fund may also serve as an officer, employee, agent or other representative of a union or other employer covered by the Plan. 29 U.S.C. § 1108(c)(3).  By doing so, the trustee is not automatically acting as agent of both the plan and the employer or union.  NLRB v. Construction & Gen'l Laborers' Union Local 1140, 577 F.2d 16, 20 n.6 (8th Cir. 1978).  Here, the Funds argue that during discovery, Lindstrom asserted that the agents and representatives described in their counterclaim were members of the Laborers District Council of Minnesota and North Dakota (the "Union").  Lindstrom has not demonstrated, however, that these agents were

7

acting on behalf of the Funds when they alleged interfered with Lindstrom's prospective business contracts.

The Funds further assert that Lindstrom has not specifically identified which Trustees allegedly took action against them. The Funds assert that Lindstrom cannot produce any evidence that any Union employee was given authority to act as the agent of the Board of Trustees. Similarly, Lindstrom has produced no evidence that any action was taken by someone from the Union who has the apparent authority to act as an agent for the Board of Trustees.

Lindstrom responds that Rod Skoog, the Funds Administrator, has a personal animus for Dave Sobaski. In support, Bill Sievers, a majority shareholder of EnviroTech shares, testified at his deposition that he told Skoog that EnviroTech wasn't prepared to write out a check to the Fund because there was no money. Sievers further testified that Skoog got angry and told Sobaski "I will fuck up your reputation and I will fuck up your new business." (Nissen Aff. Ex. H (Sievers Dep. at 195-96).)

Lindstrom further asserts that it has produced deposition testimony from the Trustees to show that they collectively authorized their agents to contact Lindstrom employees and industry contractors to discourage them from doing

business with Lindstrom. (See Crippen Aff. [Doc. No. 195], Ex. B (Bartz Dep. at 85); Ex. C (Mackey Dep. 81-82, 89, 96, 118); Ex. D (Kramer Dep. at 40); Ex. E (Brady Dep. at 82).) Specifically, letters were sent to employees, notifying them that they had forfeited their hour bank (a mechanism to maintain health insurance when an employee is not working because of a layoff) if they went to work for an employer, such as Lindstrom, that was not contributing to an employment benefit fund. (Borer Aff., Ex. Q.) Lindstrom asserts these letters were sent by Skoog with the Trustees' approval.

Also, the Funds' counsel sent a letter to customers notifying them that the Fund had sued EnviroTech because EnviroTech did not make all contributions due and owing, and that EnviroTech may have transferred its operations to Lindstrom, and that the Funds would be seeking discovery from Lindstrom. (Id., Ex. B (Bartz Dep. Ex. 12).) Lindstrom asserts that at the time this letter was sent out, September 15, 2009, the Funds had no information to support the assertion that EnviroTech transferred its operations to Lindstrom.

Lindstrom further asserts that Trustee Tim Mackey testified that his business agent contacted Fairview Riverside Hospital and that the agent was instructed to find out if Lindstrom was doing the work. (Crippen Aff., Ex. C

(Mackey Dep. at 89-90, 96).)

Lindstrom asserts that other allegedly harmful acts include letters from the Great Lakes Region Organizing Committee, sent in February and March 2001, to school district officials encouraging them not to do business with Lindstrom Environmental. (Id., Ex. F (Keeley Dep. Exs. 70 and 71). These letters include information about a MNOSHA violation against EnviroTech - not Lindstrom - concerning an employee death that took place in 2005, a mechanics lien filed against EnviroTech - not Lindstrom - and the current claims against Lindstrom regarding alter ego liability.

The Court finds that the letters to employees concerning the forfeiture of their hour bank are not wrongful, as it appears they were sent in compliance with a plan term adopted by the Trustees. (Borer Aff. Ex. M.) Even if the letters were considered wrongful, however, a claim based on the letters would be preempted by ERISA. 29 U.S.C. § 1144 (a). See Minn. Chapter of Assoc. Builders and Contractors, Inc. v. Minn. Dep't of Public Safety, 267 F.3d 807 (8th Cir. 2001). Further, it appears that Lindstrom lacks standing to assert such a claim, as the letters were directed to individual employees, not Lindstrom.

The Funds assert various arguments in an attempt to preclude further evidence submitted by Lindstrom in support of its claim that persons acting on behalf of the Trust intentionally interfered with Lindstrom's prospective business, but the Court finds such arguments without merit.

The question of whether a trustee is acting on behalf of trust beneficiaries or the union is one of fact. Gen'l Laborers' Union Local 1140, 577 F.2d at 20. Based on the evidence submitted, the Court finds that Lindstrom has demonstrated that genuine issues of material fact exist as to whether persons acting on behalf of the Funds intentionally interfered with Lindstrom's prospective business advantages.

The Funds further assert that Lindstrom has failed to provide any evidence that it was damaged as a result of the Funds' alleged wrongful acts. Neither Sobaski or Bentz, the controller for Lindstrom, testified as to any specific damages that was caused by the Funds' alleged interference.

Lindstrom cites to the deposition testimony of its owner, Charles Lindstrom, who testified as to the impact this litigation as on his business - including legal fees and the impact the letters have on business in general. (Nissen Aff., Ex. K (Lindstrom Dep. at 15-16).) The Court finds such evidence is

11

sufficient to present the issue of damages to a jury.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [Doc. No. 180] is DENIED.

Date: August 26, 2011

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

Civil No. 09-1976